Steven E. Savage (SS3475)
Robert P. Gammel (RG8319)
Counsel for Plaintiff
Law Offices of Steven E. Savage
384 Market Street, Suite C
Newark, New Jersey 07105
(973) 954-4354

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
                                              :

VALERIE MEDCALF (an individual),    :

           Plaintiff,        :     **Civil Action No.**

      -against-       :

                       :     **COMPLAINT**

THOMPSON HINE LLP, JOHN DOES   :
1-10, and ABC CORPS 1-10      :

          Defendants.   :     **JURY TRIAL DEMANDED**
-------------------------------------------------------X

Plaintiff Valerie Medcalf (hereinafter "Plaintiff"), by and through her attorneys Law Offices of Steven E. Savage, LLC, for her complaint against Defendants Thompson Hine LLP (hereinafter Defendant TH), John Does 1-10 and ABC Corps 1-10 (hereinafter "Defendants"), alleges as follows:

<u>Nature of this Action</u>

1.  This is an action for employment discrimination, wrongful termination, past and future loss of earnings, pain and suffering and other relief related to the employment and discriminatory treatment of the Plaintiff by and through Defendants, which treatment culminated in the wrongful discharge of Plaintiff, after nearly 7 years of faithful and dedicated employment, by the Defendants on or about February 28, 2012. These claims arise out of various theories based upon Federal anti-discrimination laws and State anti-discrimination laws.

JURISDICTION AND VENUE

2.  This Court has subject matter jurisdiction over this suit pursuant to 28 U.S.C. §§1331 and 1332(a)(1); Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e)-5(f), et seq., as amended ("Title VII"); 42 U.S.C. § 12101, et seq., the Americans with Disabilities Act ("ADA") and 29 U.S.C. § 2601, et seq., the Family and Medical Leave Act of 1993 ("FMLA") to redress and enjoin employment practices of Defendant in violation of these federal statutes.

3.  The matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between citizens of different states.

4.  Venue is proper in the Southern District of New York under 28 U.S.C. §§ 1391(b) & (c) and 42 U.S.C. § 2000e-5(f) because a substantial part of the wrongful conduct complained of herein occurred in this District, Defendant TH transacts substantial business in this District; and Defendant TH maintains employment records related to this action in New York.

5.  The Plaintiff has exhausted her administrative remedies and complied with the statutory prerequisites of Title VII and the Americans with Disabilities Act by filing charges with the Equal Employment Opportunity Commission alleging discrimination and Plaintiff has perfected her Right to Sue.

PARTIES

6.  Plaintiff resides at 272 Griggs Avenue in the Township of Teaneck, in the County of Bergen, in the State of New Jersey 07666, along with Chokri Cherif, her legal husband since April 2, 2004. Plaintiff and her husband have been romantic partners for more than 19 years and have considered each other family during the entirety of this period and at all times relevant to these allegations.

- 2 -

Plaintiff and her husband have one natural child, C.L.M., who has resided with them since her birth on May 30, 2011.

7.   Defendant TH is a national Law Firm, with offices in Atlanta, Cincinnati, Cleveland, Columbus, Dayton, New York, and Washington, D.C.  Upon information and belief,  Defendant TH employed more than 500 persons during all times relevant to the events in this Complaint.

<u>FACTUAL BACKGROUND</u>

8.   From May of 2005 to February 28, 2012, Plaintiff was employed as a legal secretary by Defendant TH in its office located at 335 Madison Avenue, 12th Floor, New York, NY 10017.

9.   When Plaintiff was hired by Defendant TH in 2005, her rate of pay was approximately $56,000 per annum.  At the time Plaintiff was wrongfully terminated in February 2012, her rate of pay was approximately $83,000 per annum.

10. From 2006 until 2012, when Plaintiff was wrongfully terminated, Office Administrator Carol Palmer was her direct immediate supervisor.  She, along with Defendant TH's Human Resources Director Tony Brown, and Defendant TH's New York Office Partner In Charge Kathy Brandt, and Defendant TH's former New York Office Partner In Charge George Walsh, among others, was responsible for violating Plaintiff's civil rights and wrongfully terminating her employment.

11. In late 2010, Plaintiff and her husband, Dr. Chokri Cherif, learned that Plaintiff was pregnant and that they were expecting their first child.  Their daughter was subsequently delivered full-term on May 30, 2011.  When it was appropriate, Plaintiff made her supervisor, Carol Palmer, and George Walsh and the other attorneys she supported aware of her pregnancy and the anticipated timing of her childbirth and related leave.  There is no doubt whatsoever that the

management at Defendant TH's offices was aware of her pregnant status during the majority of her pregnancy.

12. During Plaintiff's pregnancy, she tried to keep regular prenatal appointments with her OB/GYN, but was sometimes prevented from doing so by the overly restrictive policy Defendant TH has for medical appointments, including those related to pregnancy.  In speaking with other women, attorneys, secretaries, and support staff alike, Plaintiff learned that most of them felt that the Employer's medical appointment policies were unfair to pregnant employees.

13. Attorney George Walsh, whom Plaintiff supported, made his disapproval apparent whenever Plaintiff had to go to the doctor.  This tacit disapproval and apparent negativity exacerbated the stressors Plaintiff was already under and made her worry for her job whenever she would go to a prenatal appointment.  He expressed his negativity towards Plaintiff directly, but also to her direct supervisor, Carol Palmer, and to Evelyn Walsh, his wife (a non-employee).  He typically did so to Evelyn in email form.

14. Due to the restrictive policies regarding medical leave and childbirth, Plaintiff was forced to work full-time until approximately two weeks before her daughter's birth and then pieced together a leave period by combining various types of leave and vacation days so that she could have an approximate eight-week period to focus on her growing family.  Plaintiff went out on her leave on May 18, 2011.

15. On or about June 24, 2011, Plaintiff began experiencing symptoms of postpartum-related mental health issues, including severe anxiety and panic attacks. Because of her inexperience with these issues, and in consultation with her doctors, Plaintiff assumed these issues would abate as her

bodily systems returned to normal following her daughter's birth. However, shortly thereafter, she began suffering from severe and frequent irregular heart palpitations.

16. On or about July 14, 2011, Plaintiff was treated at the Holy Name Hospital (Teaneck, New Jersey) Emergency Room by Dr. Nathaniel Lebowitz, a Cardiologist, who diagnosed her with consistent Premature Ventricular Contractions (PVC's).

17. On or about July 19, 2011, Plaintiff returned to work from her parenting leave. Plaintiff assumed that returning to work would aid her physical and mental symptoms to abate. However, disassociation, suicidal ideations and "Major depression disorder" started very shortly after Plaintiff returned to work from her parenting leave. These symptoms were accompanied by the aforementioned severe anxiety and panic attacks.

18. On or about August 5, 2011, Plaintiff was treated at the Englewood (New Jersey) Hospital Emergency Room by Dr. Erik Chu, after which, Dr. Michael V. Stefanovich, a psychiatrist at Englewood Hospital, diagnosed her with postpartum-related mental health issues. At this time, Plaintiff was also prescribed medication to treat my illnesses.

19. On or about August 5, 2011, Plaintiff began her leave related to her postpartum related medical issues, consisting of vacation days, personal days, FMLA and disability leave (collectively hereinafter "postpartum leave").

20. On or about August 8, 2011, Plaintiff began seeing Dr. Wei Wang, a psychiatrist in private practice, in Englewood, New Jersey. Dr. Wang advised Plaintiff that her postpartum issues were very severe and that Plaintiff would likely need up to five months of "no duty" time to fully recover. At that time, Plaintiff was prescribed additional medication for her postpartum related mental health issues.

21. Shortly thereafter, Plaintiff informed via email her supervisor, Carol Palmer, George Walsh, and other attorneys whom she supported, of Dr. Wang's diagnosis and of her five-month treatment plan. In the same email, Plaintiff requested of all recipients that this information be kept private and confidential as she worried about giving her colleagues and co-workers a negative impression of her if they got incomplete reports of her mental condition.   Plaintiff later learned that George Walsh *immediately* forwarded her email to his wife, Evelyn Walsh, a non-employee with no legitimate need to know her confidential medical information.   George Walsh forwarded her email using his work email.  Evelyn Walsh nearly immediately responded via email with her skepticism and aspersions about my reliability.  Plaintiff did not become aware of this exchange between the Walshes until several months later.

22. On or about October 4, 2011, Plaintiff began seeing Dr. Paul Schneck, a psychiatrist in private practice, in Englewood, New Jersey.  Plaintiff continues to have regular sessions with Dr. Schneck, and Dr. Schneck continues to prescribe medications in treatment for her mental health issues.

23. On or about November 21, 2011, Plaintiff returned to work from her postpartum leave. Although Plaintiff's doctor counseled her to take more time off, Plaintiff returned in full consultation with her doctor because his orders were not consistent with the Employer's policies and/or with the financial situation in her household.

24. Between the times after Plaintiff returned to work from her parenting leave and before she left for her postpartum leave, Plaintiff continued to perform her job in an exemplary manner (as Plaintiff always had, according to every performance appraisal she ever received from the Employer).

25. Plaintiff and her husband had decided to breastfeed their child, given the obvious benefits to her health and the bond it creates between mother and baby. Because Plaintiff worked full-time, she had to express breast milk from her breasts into containers and store it for her baby's consumption. Plaintiff would generally have to do so at least once while at work.

26. Plaintiff brought the breast pump machine and all the necessary parts and accessories and was instructed to set it up in the same small closet where Defendant TH stored excess alcoholic beverages it used for entertaining, along with holiday decorations and various and sundry office paraphernalia. The closet was generally dusty and dirty and, more than once, Plaintiff saw insects and other vermin (or their droppings and/or residue) in and around that closet—in close proximity to the machine that processed her daughter's food. Also, because other persons had access to the materials and supplies stored in that room, it was never entirely private or really appropriate for baring her chest and expressing milk. It was not a fitting accommodation.

27. Further, when Plaintiff returned to work following her daughter's birth, she was told that the only times Plaintiff could express milk were during her lunch breaks. There were many times when her body produced milk and needed to be expressed but Plaintiff was unable to do so because of this overly restrictive rule about when Plaintiff could do it. Considering that employees who smoke cigarettes (which Plaintiff does not) are able to do so whenever their body tells them it is time, this policy regarding the timing of milk expression seems unduly harsh and affects women disproportionately.

28. When Plaintiff returned from her postpartum leave, she realized that she was no longer the secretary officially supporting George Walsh. Because Mr. Walsh is a difficult, oftentimes petulant person, Plaintiff was not disappointed about this reassignment. However, Plaintiff also soon realized that she still had Mr. Walsh's telephones ringing on her desk, and Mr. Walsh still routinely

ordered Plaintiff to perform secretarial work for him.  Much of the work he ordered Plaintiff to perform was searching his voluminous email inbox and sent folders to locate information related to client matters.

29. Plaintiff officially supported George Walsh as his secretary from shortly after her arrival at Thompson Hine until her return from postpartum leave.  Plaintiff continued to support him unofficially until she was wrongfully terminated by Defendant TH.

30. Defendant TH's policy requires all attorneys, including George Walsh, to designate in writing exactly which Microsoft Outlook/Exchange privileges they elected to delegate to the secretary assigned to support them.  These privileges include any combination of email, calendaring, contact file, and others.  The highest delegation would permit the secretary to have the same level of authorship over these areas as the attorney has, i.e., the ability to perform functions as if the secretary were the attorney.  George Walsh granted this highest authority to Plaintiff, in writing, at the beginning of their working relationship.  Plaintiff maintained this level of authorship and authority over Mr. Walsh's account until she was wrongfully terminated in February of 2012.

31. George Walsh developed the habit of never deleting any of his emails.  He also kept everything in the same general folders, never creating custom folders based on client or matter.  He also never created any folders to designate any of his messages confidential, personal, or any other such designations.  His habit of saving everything was such a problem that Defendant TH had to create special storage capabilities and other such measures so that Mr. Walsh's computer and Outlook account would continue to function.

32. Defendant TH also has a policy that requires all employees, including Mr. Walsh and all other attorneys, never to use their assigned work email for any personal purpose.  Mr. Walsh daily violated this policy by corresponding numerous times daily with his wife Evelyn Walsh.

33. When writing on behalf of one of her attorneys, or when writing to an external audience on her own behalf, Plaintiff observed the standards for professional business communications, using the proper cases in the Subject line and body of each email.  Plaintiff's practice when emailing on her own behalf to an intra-firm audience had always been to use only lowercase letters in the Subject line and body of the emails.  This latter practice was observed when writing to George Walsh and others about anything internal or personal that might have affected the work getting done.

34. Until the last day Plaintiff worked at Defendant TH, George Walsh would regularly call upon her to search for some obscure email to or from a client or another attorney and to provide her with some information therefrom.  This remained true even when Plaintiff was no longer his assigned secretary (following her return from her postpartum leave) until Plaintiff was wrongfully terminated by Defendant TH.

35. On or about February 21, 2012, while performing one of these searches for Mr. Walsh, Plaintiff recognized a series of replies to email forwards of some of the "lowercase Subject line" emails Plaintiff had sent to Mr. Walsh regarding her health, her pregnancy, her mental health issues, and her father's death, among other things.  Plaintiff could tell that they were replies to email forwards because they carried the RE: FWD (or similar such) designation before her original lowercase Subject line.  Plaintiff naturally became curious as to why Mr. Walsh would have forwarded her confidential emails to anyone, so Plaintiff began to open them.  Plaintiff soon discovered that they were replies from Evelyn Walsh to forwards George Walsh had made of her confidential emails.  Evelyn Walsh is not an employee of Defendant TH and had no legitimate

business purpose to know any of the contents of those emails, let alone be in possession of the actual emails.

36. The contents of the Evelyn Walsh replies were generally disparaging of Plaintiff, of her work, of her child, and of her integrity. In them, she referred to her then-one-month-old baby as needing "a decent shower" and implied that Plaintiff was not a fit mother. She expressed her, upon information and belief, uninformed opinion that Plaintiff was a malingerer, that her mental illness was not real, and that Plaintiff was taking advantage of George Walsh's largesse.

37. Because Plaintiff was shocked, hurt, and angry, and perhaps because of her extant mental and emotional issues, on February 21, 2012, Plaintiff undertook to write Evelyn back and demand that she not speak of her or her child again. Later that day, Evelyn wrote Plaintiff back and pretended that she had not disparaged Plaintiff or her daughter in any way.

38. On or about February 22, 2012, Plaintiff spoke with her supervisor, Carol Palmer, and made her aware of what was occurring between her and Evelyn Walsh. Ms. Palmer sent Plaintiff back to her desk to commence her work. When Plaintiff arrived at her desk, she discovered Ms. Walsh's reply to her and Plaintiff wrote her again, confronting her with the lies from her response. Carol Palmer summoned Plaintiff to her office upon learning of the second exchange with Evelyn. She told Plaintiff that she would need to investigate the matter and that Plaintiff should go home, with pay, and await the outcome of the investigation. Plaintiff did so.

39. Over the next few workdays, Plaintiff participated in telephone calls and email exchanges with Carol Palmer and Tony Brown regarding the incident. On February 28, 2012, Plaintiff was discharged via telephone.

40. When Plaintiff filed for unemployment compensation, Plaintiff was initially denied because Defendant TH had alleged misconduct in contention.  On or about November 19, 2012, Plaintiff appeared at a hearing before the Hon. Diane Dubiac, A.L.J. where testimony was taken from Plaintiff regarding the alleged misconduct.  She also accepted testimony from Carol Palmer (present) and an appearance by a Cleveland-based attorney representing Defendant TH (appearing by telephone).  Judge Dubiac made the determination that no misconduct had occurred and ruled Plaintiff eligible to receive unemployment compensation benefits.

41. In response to Judge Dubiac's ruling, Tony Brown, on behalf of Defendant TH, filed an appeal with the Unemployment Insurance Appeals Board.  In May of 2013, the appeal was denied, affirming Judge Dubiac's ruling that no misconduct had occurred.  Defendant TH had to pay Plaintiff unemployment benefits.

42. Defendant TH has engaged in a pattern of conduct that has deprived Plaintiff of her civil rights, by engaging in discrimination on the basis of Plaintiff's gender and her status as a pregnant woman when it denied her the opportunity to attend some of her prenatal medical visits, when it denied her a clean, safe place to express her breast milk for her child, when it permitted Partner George Walsh and his non-employee spouse, Evelyn Walsh to use Mr. Walsh's Thompson Hine email to disparage Plaintiff as a woman and as a secretary, and when it denied her the opportunity to express breast milk on an as-needed basis, among other acts and/or omissions.

43. Defendant TH has engaged in a pattern of conduct that has deprived Plaintiff of her civil rights,  by engaging in discrimination on the basis of her status as a person with a recognized and diagnosed disability when it failed to keep Partner George Walsh and his non-employee spouse, Evelyn Walsh from using Mr. Walsh's Thompson Hine email to create disparaging emails about Plaintiff and her child and the state of her mental health when the Walshes and Defendant TH knew

(or should have known) that Plaintiff would see them and be personally affected, when it permitted its employees and managers to apply continuing pressure to force her to return to work from her postpartum leave before her doctor felt Plaintiff was fully ready, when it attempted to deny Plaintiff and her family unemployment benefits when it knew (or should have known) that her conduct was not misconduct according to either firm policy or New York Department of Labor regulations, and when Defendant TH took Plaintiff off of George Walsh's desk officially, but forced her to continue supporting him in addition to her already full roster of other attorneys, among other acts and/or omissions.

44. Defendant TH has engaged in a pattern of conduct that has deprived Plaintiff of her civil rights, by engaging in discrimination on the basis of her status as a person with a recognized and diagnosed disability when it terminated Plaintiff's employment because her disability had become inconvenient for it, rather than reasonably accommodating it as it is required, by law, to do.

## CAUSES OF ACTION

### AS AND FOR A FIRST CAUSE OF ACTION AGAINST DEFENDANT THOMPSON HINE LLP AND JOHN DOES 1-10 AND ABC CORPS 1-10
**Indivisible Harm Caused by Separate Tortfeasors against Plaintiff Medcalf**

45. Plaintiff hereby repeats and realleges each allegation contained in paragraphs 1 through 44, as if fully set forth herein.

46. The numerous tortious actions and/or omissions that have been performed and/or failed to be performed by each of these Defendants individually as against Plaintiff constitute a pattern of impermissible and wrongful conduct which has been ultimately severely damaging to Plaintiff.

47. These actions and/or omissions by these Defendants jointly and severally have directly and proximately caused injury and/or loss to Plaintiff and cannot be subdivided with reasonable certainty and attributed and allocated to the individual tortfeasors.

48. Because of the indivisible nature of these actions and omissions, these Defendants should be held jointly and severally liable for each and every action and omission alleged herein, and should be jointly and severally responsible for curing and/or compensating the damage caused by same.

49. As a direct and proximate result of the impermissible acts and/or omissions by these Defendants as alleged herein above and below, these Defendants are jointly and severally liable to Plaintiff for (a) actual damages in an amount to be determined at trial but no less than $500,000; (b) punitive damages in an amount sufficient to prevent others from engaging in similar schemes, conduct, and/or omissions, but not less than treble actual damages of not less than $1,500,000; (c) costs and disbursements; and (d) attorneys' fees of not less than $125,000.

AS AND FOR A SECOND CAUSE OF ACTION AGAINST DEFENDANT THOMPSON
HINE LLP AND JOHN DOES 1-10 AND ABC CORPS 1-10

**Discrimination against Plaintiff Medcalf
on the basis of her gender under Title VII of the
Civil Rights Act of 1964 – 42 USC § 2000e, et. seq.**

50. Plaintiff hereby repeats and realleges each allegation contained in paragraphs 1 through 49, as if fully set forth herein.

51. Defendant Thompson Hine LLP, by and through its partners, associates, managers and agents, and particularly by and through its partners George J. Walsh III and Katherine Brandt, and its managers Tony Brown and Carole Palmer (among others), treated Plaintiff in a hostile manner, and differently than how they treated her male counterparts, by, among other actions/omissions, speaking to her aggressively and without the respect normally accorded to a professional person of Plaintiff's stature, status, and experience, and eventually terminating her for reasons that are explicitly related to her gender, her pregnancy, and her resulting post-partum mental health issues.

52. Additionally, the Defendants undertook to violate Plaintiff's rights by denying her the opportunity to pursue prenatal healthcare unfettered by the obstacles they placed in her way, and commensurate with the written and published policies which purport to govern the behavior of all of Defendants' employees.

53. As a direct and proximate result of the Defendants' gender discrimination against Plaintiff Medcalf, Plaintiff Medcalf has suffered and continues to suffer substantial pecuniary losses, including

the loss of past and future earnings, promotions, bonuses, deferred compensation, and other employment benefits, including, but not limited to seniority and investing in her retirement savings plan.

54. As a further direct and proximate result of the Defendants' actions and omissions to act, Plaintiff Medcalf has suffered and continues to suffer impairment and damage to her good name and reputation, which name and reputation were the basis of significant merit raises, bonuses, and outstanding performance reviews during each review period of her employment with Defendants, save the periods including and immediately following her pregnancy and post-partum intervals.

55. As a further direct and proximate result of the Defendants' actions and omissions to act, taking or not on the basis of Plaintiff Medcalf's gender, Plaintiff Medcalf has suffered and continues to suffer severe and lasting embarrassment, humiliation, and anguish, significant exacerbation to her diagnosed post-partum mental health issues, and other incidental and consequential damages and expenses.

56. The conduct of the Defendants was outrageous and malicious, was intended to injure plaintiff Medcalf, and was done with reckless disregard and indifference to Plaintiff Medcalf's protected civil rights, and entitling Plaintiff Medcalf to an award of punitive damages.

57. As a direct and proximate result of the impermissible acts and/or omissions by these Defendants as alleged herein above and below, these Defendants are jointly and severally liable to Plaintiff for (a) actual damages in an amount to be determined at trial but no less than $500,000; (b) punitive damages in an amount sufficient to prevent others from engaging in similar schemes, conduct, and/or omissions, but not less than treble actual damages of not less than $1,500,000; (c) costs and disbursements; and (d) attorneys' fees of not less than $125,000.

## AS AND FOR A THIRD CAUSE OF ACTION AGAINST DEFENDANT THOMPSON HINE LLP  AND JOHN DOES 1-10 AND ABC CORPS 1-10

### Negligent Hiring under New York Tort Law

58. Plaintiff hereby repeats and realleges each allegation contained in paragraphs 1 through 57, as if fully set forth herein.

59. By and through the impermissible acts and/or omissions of the Defendants, George J. Walsh III was hired and became employed in the capacity of Real Estate law partner at the New York office

of the Defendants although his own mental and emotional proclivities make him unsuitable for his position.

60. The Defendants did not exercise reasonable care in the employment of George J. Walsh III, knowing full-well that Plaintiff and the other employees and junior partners and associates would regularly come into contact with George J. Walsh III, that Plaintiff and these other employees and junior partners and associates would generally be placed into uncomfortable and impermissible situations involving the conduct of George J. Walsh III, and that Plaintiff and these other employees and junior partners and associates would be unable to repair the damages caused by George J. Walsh III without jeopardizing their own careers, well-beings, and future opportunities.

61. The Defendants knew or should have known that George J. Walsh III possessed unfit, dangerous attributes and was incompetent to perform his duties as a manager, and it was reasonable for the Defendants to have foreseen that such qualities created a significant risk of substantial harm to its other employees and junior managers and, therefore, unreasonable for the Defendants to impose these risks upon their employees and junior managers unnecessarily.

62. By and through the negligent hiring of George J. Walsh III by the Defendants, George J. Walsh III's incompetence, and unfit and dangerous characteristics directly and proximately caused Plaintiff substantial and lasting harm financially, physically, mentally, emotionally, and professionally.

63. Further, George J. Walsh III's constant impermissible sharing of the proprietary and/or personal information belonging to Plaintiff and others with his spouse caused more difficulty to Plaintiff and others in carrying out their daily responsibilities and caused Plaintiff significant harm as a result.

64. As a direct and proximate result of the impermissible acts and/or omissions of George J. Walsh III and the Defendants, Plaintiff did in fact suffer substantial and lasting financial and professional injuries, and has had to seek regular therapeutic counseling in order to deal with the mental and emotional harm caused by these Defendants and their employees.

65. As a direct and proximate result of the impermissible acts and/or omissions by these Defendants as alleged herein above and below, these Defendants are jointly and severally liable to Plaintiff for (a) actual damages in an amount to be determined at trial but no less than $500,000; (b)

punitive damages in an amount sufficient to prevent others from engaging in similar schemes, conduct, and/or omissions, but not less than treble actual damages of not less than $1,500,000; (c) costs and disbursements; and (d) attorneys' fees of not less than $125,000.

## AS AND FOR A FOURTH CAUSE OF ACTION AGAINST DEFENDANT THOMPSON HINE LLP  AND JOHN DOES 1-10 AND ABC CORPS 1-10

### Negligent Supervision under New York Tort Law

66. Plaintiff hereby repeats and realleges each allegation contained in paragraphs 1 through 65, as if fully set forth herein.

67. The Defendants did not exercise reasonable care in the supervision of George J. Walsh III, knowing full-well that Plaintiff and other employees and junior partners and associates would regularly come into contact with George J. Walsh III, that Plaintiff and these other employees and junior partners and associates would generally be placed into uncomfortable and impermissible situations, and that Plaintiff and these other employees and junior partners and associates would be unable to repair the damages caused by George J. Walsh III without jeopardizing their own careers, well-beings, and future opportunities.

68. The Defendants knew or should have known that George J. Walsh III possessed unfit, dangerous attributes and was incompetent to perform his duties as a supervisory law partner, and it was reasonable for the Defendants to have foreseen that such qualities created a significant risk of substantial harm to Plaintiff and its other employees and junior partners and associates and, therefore, unreasonable for the Defendants to impose these risks upon Plaintiff and their other employees and junior partners and associates unnecessarily by failing to properly supervise George J. Walsh III regularly to mitigate and/or minimize and/or eliminate the harm to their other employees and junior partners and associates, and specifically to Plaintiff.

69. At all times relevant to the action herein, George J. Walsh III was subject to the supervision and control of the Defendants while ostensibly performing his regular duties on behalf of the Defendants in the offices of the Defendants.

70. By and through the negligent supervision of George J. Walsh III by the Defendants, George J. Walsh III's incompetence, and unfit and dangerous characteristics directly and proximately caused Plaintiff substantial and lasting harm financially, physically, mentally, emotionally, and professionally.

71. As a direct and proximate result of the impermissible acts and/or omissions by these Defendants as alleged herein above and below, these Defendants are jointly and severally liable to Plaintiff for (a) actual damages in an amount to be determined at trial but no less than $500,000; (b) punitive damages in an amount sufficient to prevent others from engaging in similar schemes, conduct, and/or omissions, but not less than treble actual damages of not less than $1,500,000; (c) costs and disbursements; and (d) attorneys' fees of not less than $125,000.

## AS AND FOR A FIFTH CAUSE OF ACTION AGAINST DEFENDANT THOMPSON HINE LLP AND JOHN DOES 1-10 AND ABC CORPS 1-10

### Respondeat Superior under New York Tort Law

72. Plaintiff hereby repeats and realleges each allegation contained in paragraphs 1 through 71, as if fully set forth herein.

73. At all times relevant to the action herein, George J. Walsh III was an employee of the Defendants and, as such, was subject to the supervision and control of the Defendants while ostensibly performing his regular duties in the offices of the Defendants.

74. George J. Walsh III and others injured Plaintiff while operating within the scope of their employment on behalf of the Defendants, and the actions taken in that regard by George J. Walsh III and others were the types of actions they were hired to perform, these actions were committed while George J. Walsh III and others were authorized to perform them in the offices of the Defendants. George J. Walsh III and others performed the actions to the ultimate economic benefit of the Defendants.

75. The Defendants intended for George J. Walsh III and others to perform the management, legal, and supervisory duties involving Plaintiff as it was convenient and financially beneficial for the Defendants for them to do so.

76. The Defendants failed to exercise reasonable care when they allowed George J. Walsh III and others to perform their managerial, legal, and supervisory duties involving Plaintiff, which performance ultimately resulted in a lasting and debilitating injuries to Plaintiff.

77. George J. Walsh III and others performed the managerial, legal, and supervisory duties involving Plaintiff with the authority of the Defendants and it was reasonable for Plaintiff to rely on

the apparent authority of George J. Walsh III and the employer-employee relationship between the Defendants and George J. Walsh III helped George J. Walsh III complete the tortious acts and/or omissions on Plaintiff.

78. As a direct and proximate result of the impermissible acts and/or omissions by these Defendants as alleged herein above and below, these Defendants are jointly and severally liable to Plaintiff for (a) actual damages in an amount to be determined at trial but no less than $500,000; (b) punitive damages in an amount sufficient to prevent others from engaging in similar schemes, conduct, and/or omissions, but not less than treble actual damages of not less than $1,500,000; (c) costs and disbursements; and (d) attorneys' fees of not less than $125,000.

## AS AND FOR A SIXTH CAUSE OF ACTION AGAINST DEFENDANT THOMPSON HINE LLP  AND JOHN DOES 1-10 AND ABC CORPS 1-10

### Intentional Infliction of Emotional Distress under New York Tort Law

79. Plaintiff hereby repeats and realleges each allegation contained in paragraphs 1 through 78, as if fully set forth herein.

80. By and through the extreme and outrageous conduct performed by George J. Walsh III and others and the Defendants involving Plaintiff, George J. Walsh III and the Defendants either intentionally acted to produce emotional distress or acted recklessly in deliberate disregard for the high probability that their impermissible acts and/or omissions would cause Plaintiff to suffer significant and lasting emotional distress.

81. By and through the extreme and outrageous conduct by George J. Walsh III and the Defendants when George J. Walsh III and/or others ridiculed Plaintiff, spoke dismissively to her in front of her colleagues, terminated her employment in apparent retaliation for her deigning to defend herself against the specious attacks by George J. Walsh III and his spouse, and then lied to the Unemployment Insurance Appeals Board about the reason Plaintiff was being terminated, along with numerous other acts and/or omissions, George J. Walsh III and others and the Defendants either intentionally acted to produce emotional distress or acted recklessly in deliberate disregard for the high probability that their impermissible acts and/or omissions would cause Plaintiff to suffer significant and lasting emotional distress.

82. George J. Walsh III's and the Defendants' conduct toward Plaintiff was intentional and malicious and done for the purpose of causing Plaintiff humiliation, mental anguish and mental and physical distress, including but not limited to severe physical pain and loss of sleep, and other such physical, emotional, and mental manifestations. These intended effects were, in fact, caused.

83. As a direct and proximate result of George J. Walsh III's and the Defendants' impermissible acts and/or omissions, Plaintiff has suffered emotional distress due to the lasting and debilitating psychological injury caused by George J. Walsh III and the Defendants, and due to the emotional and psychological turmoil caused thereby, and Plaintiff was mentally and emotionally injured thereby.

84. As a direct and proximate result of George J. Walsh III's and the Defendants' impermissible acts and/or omissions, Plaintiff endured several months of unemployment, during which time she had to use her savings and her good credit in order to sustain herself and her family, and has endured endless sessions of therapeutic counseling with the hope of regaining her previous status, all of which efforts are unlikely to completely reverse or substantially remedy the physical, mental, and emotional harms caused by these Defendants.

85. As a further direct and proximate result of the impermissible acts and/or omissions of George J. Walsh III and the Defendants and the consequences proximately caused by them, as hereinabove alleged, Plaintiff suffered and continues to suffer severe humiliation, mental anguish, and emotional and physical distress.

86. As a further direct and proximate result of the impermissible acts and/or omissions of George J. Walsh III and the Defendants, Plaintiff has incurred and will in the future incur, sundry expenses in the examination, care and treatment of Plaintiff's physical and emotional injuries, the exact nature and extent of which are presently unknown to Plaintiff.

87. As a direct and proximate result of the impermissible acts and/or omissions by these Defendants as alleged herein above and below, these Defendants are jointly and severally liable to Plaintiff for (a) actual damages in an amount to be determined at trial but no less than $500,000; (b) punitive damages in an amount sufficient to prevent others from engaging in similar schemes, conduct, and/or omissions, but not less than treble actual damages of not less than $1,500,000; (c) costs and disbursements; and (d) attorneys' fees of not less than $125,000.

<u>AS AND FOR A SEVENTH CAUSE OF ACTION AGAINST DEFENDANT THOMPSON</u>
<u>HINE LLP  AND JOHN DOES 1-10 AND ABC CORPS 1-10</u>

**Discrimination by Defendants against Plaintiff based on**
**Disability under the Americans with Disabilities Act – 42 USC § 12112(a)**

88. Plaintiff hereby repeats and realleges each allegation contained in paragraphs 1 through 87, as if fully set forth herein.

89. The Americans With Disabilities Act ("ADA"), 42 USC §12101, et seq., prohibits a covered entity from discriminating "against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 USC §12112 (a).

90. Plaintiff is a "qualified individual with a disability" as defined by 42 USC §12102 (2) and 42 USC §12111 (8). At all times relevant hereto, Plaintiff was Defendant's employee, as defined by 42 USC §12111 (4).

91. At all times relevant hereto, Defendant is and has been a "covered entity" as defined by 42 USC §12111 (2).

92. Defendant, and Defendant's agents, managers, partners, and/or employees did on numerous occasions between January 2011 and February 28, 2012 engage in conduct that treated Plaintiff hostilely and/or denied Plaintiff reasonable accommodations for her mental disabilities. This conduct included, but was not limited to, denying Plaintiff a reasonable opportunity to use her earned personal and sick time for the purpose of seeking therapeutic counseling and other medical help related to her disabilities, permitting one of Defendant's partners to utilize Defendant's electronic mail resources to ridicule and defame Plaintiff regarding her mental health disability issues, and discharging Plaintiff for an incident deriving directly from her mental health disability issues.

93. As a direct and proximate result of the impermissible acts and/or omissions by these Defendants as alleged herein above and below, these Defendants are jointly and severally liable to Plaintiff for (a) actual damages in an amount to be determined at trial but no less than $500,000; (b) punitive damages in an amount sufficient to prevent others from engaging in similar schemes,

conduct, and/or omissions, but not less than treble actual damages of not less than $1,500,000; (c) costs and disbursements; and (d) attorneys' fees of not less than $125,000.

### AS AND FOR An EIGHTH CAUSE OF ACTION AGAINST DEFENDANT THOMPSON HINE LLP  AND JOHN DOES 1-10 AND ABC CORPS 1-10

**Discrimination by Defendants against Plaintiff based on
Disability under the Americans with Disabilities Act – 42 USC § 12112(b)(5)(A)**

94. Plaintiff hereby repeats and realleges each allegation contained in paragraphs 1 through 93, as if fully set forth herein.

95. The ADA requires a covered entity to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee." 42 USC §12112(b)(5)(A).

96. Plaintiff is a qualified individual with a disability as defined by 42 USC §12102(2) and 42 USC §12111(8). At all relevant times hereto, Plaintiff was Defendant's "employee," as defined by 42 USC §12111 (4).

97. Defendant is a "covered entity" and as defined by 42 USC §12111(2).

98. In violation of the ADA, Defendant failed to make reasonable accommodations for Plaintiff.

99. As a direct and proximate result of the impermissible acts and/or omissions by these Defendants as alleged herein above and below, these Defendants are jointly and severally liable to Plaintiff for (a) actual damages in an amount to be determined at trial but no less than $500,000; (b) punitive damages in an amount sufficient to prevent others from engaging in similar schemes, conduct, and/or omissions, but not less than treble actual damages of not less than $1,500,000; (c) costs and disbursements; and (d) attorneys' fees of not less than $125,000.

### AS AND FOR A NINTH CAUSE OF ACTION AGAINST DEFENDANT THOMPSON HINE LLP  AND JOHN DOES 1-10 AND ABC CORPS 1-10

**Discrimination by Defendants against Plaintiff based on
Pregnancy under Title VII of the Civil Rights Act of 1964 – 42 USC § 2000e-5 (f), et seq.**

100.     Plaintiff hereby repeats and realleges each allegation contained in paragraphs 1 through 99, as if fully set forth herein.

101.     Defendants have discriminated against the Plaintiff in violation of Title VII because of or on the basis of pregnancy, childbirth, or related medical conditions.

102.     Plaintiff was not treated the same for all employment-related purposes, including opportunities for promotion, discipline and other terms and conditions of employment as others similarly-situated employees with similar ability or inability to work for either non-pregnant or not known to be pregnant.

103.     Defendants' policies, practices and or procedures have produced a disparate impact against Plaintiffs with respect to her opportunities for promotion.

104.     By reason of the continuous nature of Defendants' discriminatory conduct, which persisted throughout Plaintiff's employment, Plaintiff is entitled to application of the continuing violations doctrine to all of the violations alleged herein.

105.     Defendants' conduct has been intentional, deliberate, willful, malicious, reckless, and conducted with callous disregard of the rights of Plaintiff, entitling Plaintiff to punitive damages.

106.     As a direct and proximate result of Defendants' conduct alleged in this Complaint, Plaintiffs has suffered and continues to suffer harm, with including, but not limited to: lost wages, lost back pay and front pay, lost bonuses, lost benefits, lost interest and attorney fees and costs. Plaintiff is entitled to recover such monetary and other damages, punitive damages, interest, and attorney fees and costs from Defendant under Title VII.

107.     As a further direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered and continues to suffer, among other items, impairment to her name and reputation, humiliation, embarrassment, emotional and physical distress, and mental anguish. Plaintiff is entitled to recover damages for such injuries from the Defendants under Title VII.

108.     As a further direct and proximate result of the impermissible acts and/or omissions by these Defendants as alleged herein above and below, these Defendants are jointly and severally liable to Plaintiff for (a) actual damages in an amount to be determined at trial but no less than $500,000; (b)

punitive damages in an amount sufficient to prevent others from engaging in similar schemes, conduct, and/or omissions, but not less than treble actual damages of not less than $1,500,000; (c) costs and disbursements; and (d) attorneys' fees of not less than $125,000.

PRAYER FOR RELIEF

WHEREFORE Plaintiff respectfully demands this Court enter Judgment in her favor and against Defendant Thompson Hine LLP and others as yet unnamed as follows:

1.  On its First Cause of Action (Indivisible Harms) against all Defendants: Damages of not less than $500,000 plus other actual and consequential damages in an amount to be determined at trial;

2.  On its Second Cause of Action (Gender Discrimination—Disparate Treatment) against all Defendants: Damages of not less than $500,000 plus other actual and consequential damages in an amount to be determined at trial;

3.  On its Third Cause of Action (Negligent Hiring) against all Defendants: Damages of not less than $500,000 plus other actual and consequential damages in an amount to be determined at trial;

4.  On its Fourth Cause of Action (Negligent Supervision) against all Defendants: Damages of not less than $500,000 plus other actual and consequential damages in an amount to be determined at trial;

5.  On its Fifth Cause of Action (Respondeat Superior) against all Defendants: Damages of not less than $500,000 plus other actual and consequential damages in an amount to be determined at trial;

6.  On its Sixth Cause of Action (Intentional Infliction of Emotional Distress) against all Defendants: Damages of not less than $500,000 plus other actual and consequential damages in an amount to be determined at trial;

7.  On its Seventh Cause of Action (Disability Discrimination—Disparate Treatment) against all Defendants: Damages of not less than $500,000 plus other actual and consequential damages in an amount to be determined at trial;

8.  On its Eighth Cause of Action (Disability Discrimination—Reasonable Accommodation) against all Defendants: Damages of not less than $500,000 plus other actual and consequential damages in an amount to be determined at trial;

9. On its Ninth Cause of Action (Gender Discrimination--Pregnancy) against all Defendants: Damages of not less than $500,000 plus other actual and consequential damages in an amount to be determined at trial;

10. Additional punitive damages to the extent permitted by law in an amount sufficient to prevent others from engaging in similar schemes, conduct, and/or omissions, but in an amount no less than three times actual damages;

11. Interest at the legal rate on all claims for compensatory damages;

12. The costs and disbursements of this action;

13. Reasonable attorneys' fees to the extent permitted by law, but not less than $125,000; and

14. Granting such other and further relief as the Court deems just and proper.

<u>JURY TRIAL DEMAND</u>

Pursuant to Federal Rule of Civil Procedure 38(b) Plaintiff hereby respectfully demands a trial by jury of all issues triable of right by a jury.

Dated: October 25, 2013
       Newark, NJ

THE LAW OFFICES OF STEVEN E. SAVAGE

By:_____

Steven E. Savage (SS3475)
Robert P. Gammel (RG8319)
384 Market Street
Suite C
Newark, NJ 07105

*Attorneys for Plaintiff Valerie E. Medcalf*

-24-