UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

VALERIE MEDCALF,

                              Plaintiff,

            – against –

THOMPSON HINE LLP,

                              Defendant.

**OPINION AND ORDER**

13 Civ. 7609 (ER)

RAMOS, D.J.:

Valerie Medcalf ("Plaintiff" or "Medcalf") brings this action against her former employer, the law firm Thompson Hine, LLP ("Defendant" or "Thompson Hine").  The litigation arises from Plaintiff's employment relationship with Defendant during and after her pregnancy.  Specifically, Plaintiff alleges several claims against Defendant for employment discrimination and breach of privacy in violation of federal, state, and local laws.  Defendants move to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  *See* Def.'s Mem. L. Support Mot. Dismiss, Doc. 24.  Defendant contends that Plaintiff's claims are barred by the doctrine of res judicata, citing a separate case filed by Plaintiff in this district against one of Defendant's partners and his wife that the court dismissed with prejudice on April 9, 2013.  *Id.* at 1 (citing *Medcalf v. Walsh*, 938 F. Supp. 2d 478 (S.D.N.Y. 2013)) (hereinafter *Medcalf I*).  For the reasons set forth below, Defendants' motion is DENIED.

I.    **Background**[1]

  A.  **Factual Background**

      Plaintiff was employed as a legal secretary by Defendant from May 2005 until February 28, 2012, when Defendant terminated her employment.  Am. Compl., Doc. 8 at ¶¶ 6, 43. Plaintiff became pregnant with her first child in late 2010.  *Id*. at ¶ 9.  She informed Carol Palmer ("Palmer"), Office Administrator and Plaintiff's direct supervisor, and George Walsh ("Walsh"), one of the attorneys she supported, of her pregnancy and due date.  *Id*. at ¶¶ 8, 10.  Plaintiff claims that, during her pregnancy, she was sometimes prevented from keeping her regular prenatal appointments due to Defendant's "overly restrictive policy" with respect to medical appointments.[2]  *Id*. at ¶ 11.  In addition, Walsh expressed his "tacit disapproval" and "apparent negativity" whenever she needed to attend a prenatal appointment.  *Id*. at ¶ 12.

      Plaintiff gave birth to her daughter on May 30, 2011.  *Id.* at ¶ 9.  As a result of Defendant's maternity and medical leave policies, Plaintiff contends that she was "forced" to work full-time up until two weeks before she gave birth.  *Id*. at ¶ 13.  The Complaint indicates that Plaintiff's eight-week leave period, which commenced May 18, 2011, consisted of various types of leave and vacation days.  *Id*.  Plaintiff returned to work on July 19, 2011.  *Id*. at ¶ 16. The Complaint explains that, since Plaintiff was breast-feeding her child and working full-time, she had to express breast milk at least once per day while at work.  *Id*. at ¶ 26.  It further alleges that she was only allowed to do so during her lunch break and only in a closet that stored excess alcoholic beverages, holiday decorations, and office supplies.  *Id*. at ¶¶ 27-28.   According to

---

[1] The following facts are based on the allegations in the Amended Complaint, which the Court accepts as true for purposes of the instant motion.  *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

[2] The Complaint does not set forth the terms of the policy regarding medical appointments.

Plaintiff, other individuals had access to the materials stored in the closet and therefore the space was not entirely private.  *Id*. at ¶ 27.  She also maintains that the closet was "dusty and dirty" and that she saw insects and other unspecified vermin in and around the closet.  *Id*.

Plaintiff claims that she began experiencing symptoms associated with "post-partum related mental health issues" on or about June 24, 2011, before returning to work.  *Id*. at ¶ 14. She visited the hospital emergency room at least twice—once on July 14, 2011 and again on August 5, 2011.  *Id*. at ¶¶ 15, 18.  During the second visit, which occurred after she had returned from maternity leave, she was diagnosed with postpartum-related mental health issues and prescribed medication.  *Id*.  Plaintiff claims that she then began seeing a psychiatrist, who advised her that her condition was "very severe" and "would likely need up to five months of 'no duty' time to fully recover."[3]  *Id*. at ¶ 20.

Shortly after her visit with the psychiatrist, Plaintiff informed Palmer, Walsh, and the other attorneys whom she supported via email of the doctor's diagnosis and the recommended five-month recovery period.  *Id*. at 21.  In the same email, she asked that the information be kept confidential.  *Id*.  Plaintiff returned from her postpartum leave on November 21, 2011.  *Id*. at ¶ 24.

Upon her return, Plaintiff learned that she was no longer officially supporting Walsh.  *Id*. at ¶ 29.  Nonetheless, Plaintiff alleges that she was still required to answer his phone and do other secretarial work for him.  *Id*. at ¶ 29.  Specifically, Walsh asked Plaintiff to conduct searches of his email account on a regular basis during the time that she worked for Defendant. *Id*. at ¶ 36.  In order to carry out that task, Walsh granted Plaintiff the same level of access to his

---

[3] During October of the same year, Plaintiff began consulting another psychiatrist who continues to see her and prescribe her medication.  *Id*. at ¶ 23.

email as he himself had.  *Id*. at ¶¶ 31-32.  On February 21, 2012, while supposedly searching Walsh's account for a message she was asked to find, Plaintiff discovered that Walsh had forwarded several messages that Plaintiff had sent about her health and pregnancy to his wife. *Id*. at ¶¶ 37-38.  Plaintiff also came across his wife's responses to those emails, which Plaintiff interpreted as "disparaging" to herself and her child.  *Id*. at ¶ 40.  Among other things, Walsh's wife allegedly implied that Plaintiff was an unfit mother and a "malingerer" who was taking advantage of Walsh while suffering from an illusory illness.  *Id*. at ¶ 40.  Plaintiff responded by sending a message directly to Walsh's wife, who in turn replied that she had not disparaged Plaintiff or her daughter.  *Id*. at ¶ 41.

The following day, Plaintiff made Palmer aware of what had occurred.  *Id*. at ¶ 42. Plaintiff also directly replied to Walsh's wife again.  *Id*.  Upon learning about Plaintiff's second communication to Walsh's wife, Palmer instructed Plaintiff to go home, with pay, while Palmer investigated the matter.  *Id*.  Following several telephone and email exchanges between Plaintiff, Palmer and Tony Brown, Defendant's Human Resources Director, Plaintiff was discharged on February 28, 2012.  *Id*. at ¶ 43.  Plaintiff claims that she was initially denied unemployment compensation because Defendant alleged misconduct on her part.  *Id.* at ¶ 44.  However, an administrative law judge determined that no misconduct had occurred and ruled that Plaintiff was eligible for unemployment benefits; Defendant's appeal was denied.  *Id*. at ¶ 45.

## B.  Procedural Background

On June 29, 2012, Plaintiff filed a Complaint against Walsh and his wife, along with John Does Numbered 1-25, in the Southern District of New York asserting four claims, each sounding in intentional tort:  conspiracy to commit tortious interference with business relations, tortious interference, intentional infliction of emotion distress, and defamation.  *Medcalf I*,

4

938 F. Supp. 2d at 481-82, 484; *see also Medcalf I*, Doc. 1.[4]  An Amended Complaint was filed

on October 22, 2012.  *See Medcalf I*, Doc. 15.  Plaintiff alleged many of the same facts in

*Medcalf I* as in the instant case.  The commonly alleged facts include Plaintiff's pregnancy,

Thompson Hine's unidentified policy concerning prenatal medical appointments and Walsh's

negative reaction to Plaintiff keeping those appointments.  *Medcalf I*, Doc. 15 at ¶¶ 15-16.

Plaintiff also described her post-partum related mental health issues, the related five-month

recommended leave, and her confidential communication of these issues with her supervisor and

Walsh.  *Id.* at ¶¶ 18-23.  The Amended Complaint explains the events that occurred following

Plaintiff's return from her post-partum leave, including her discovery of the emails Walsh

forwarded to his wife, Plaintiff's response, and her subsequent termination.  *Id*. at ¶¶ 28-37.

The Honorable Judge Paul A. Engelmayer granted the defendants' motion to dismiss the

Amended Complaint with prejudice as to both defendants.  *Medcalf I*, 938 F. Supp. 2d at 491.  In

its opinion, the court referred to Walsh and his wife as the "sole defendants," explaining that,

although Plaintiff initially brought claims against twenty-five additional defendants, she

announced her intent to abandon those claims at her initial conference and the Amended

Complaint did not pursue them.  *Medcalf I*, 938 F. Supp. 2d at 485 n.4.

More than six months later, on October 25, 2013, Plaintiff filed the present action.  In the

Amended Complaint, Plaintiff asserts seven claims against Defendant:  (1)  gender

discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C.

§ 2000e *et seq*.; (2)  disability discrimination in violation of the Americans With Disabilities Act

("ADA"), 42 U.S.C. § 12112(a); (3) failure to provide reasonable accommodation in violation of

the ADA, 42 U.S.C. § 12112(b)(5)(A); (4) discrimination in violation of the Pregnancy

---

[4] Plaintiff's prior action is docketed at 1:12-cv-05091.

Discrimination Act, 42 U.S.C. § 2000e(k), contained in Title VII;[5] (5) violations of the Family

Medical Leave Act ("FMLA"), 29 U.S.C. § 2615(a); (6) gender, pregnancy, and disability

discrimination in violation of the New York City Human Rights Law ("NYCHRL"); and (7) a

violation of her right to privacy.  *Id.* at ¶¶ 49-88.  None of these claims were asserted against the

defendants in the first action.

## II.   Discussion

### A.  12(b)(6) Motion to Dismiss Standard

When ruling on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6),

the court must accept all factual allegations in the complaint as true and draw all reasonable

inferences in the plaintiff's favor.  *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014).  The court is

not required to credit "mere conclusory statements" or "threadbare recitals of the elements of a

cause of action."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 555 (2007)); *see also id.* at 681 (citing *Twombly*, 550 U.S. at 551).  "To survive a

motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief

that is plausible on its face.'"  *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).  A claim is facially

plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S.

at 556).  More specifically, the plaintiff must allege sufficient facts to show "more than a sheer

possibility that a defendant has acted unlawfully."  *Id.*  If the plaintiff has not "nudged [his]

claims across the line from conceivable to plausible, [the] complaint must be dismissed."

*Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 680.

---

[5] The Complaint erroneously cites 42 U.S.C. § 2000e-5(f), which is not the pertinent provision of the statute with respect to pregnancy discrimination.

The question in a Rule 12 motion to dismiss "'is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012) (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 278 (2d Cir.1995)).  "[T]he purpose of Federal Rule of Civil Procedure 12(b)(6) 'is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits,'" and without regard for the weight of the evidence that might be offered in support of Plaintiff's claims. *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011) (quoting *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006)).

"A court may consider a res judicata defense on a Rule 12(b)(6) motion to dismiss when the court's inquiry is limited to the plaintiff's complaint, documents attached or incorporated therein, and materials appropriate for judicial notice." *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 498 (2d Cir. 2014) (citing *Day v. Moscow*, 955 F.2d 807, 811 (2d Cir. 1992)). Generally, res judicata is an affirmative defense that is pleaded in the defendant's answer. *See Day v. Moscow*, 955 F.2d 807, 811 (2d Cir. 1992) (citing Fed. R. Civ. P. 8(c)).  However, "when all relevant facts are shown by the court's own records, of which the court takes notice, the defense may be upheld on a Rule 12(b)(6) motion without requiring an answer." *Id.* (citing *W.E. Hedger Transp. Corp. v. Ira S. Bushey & Sons*, 186 F.2d 236, 237 (2d Cir. 1951)).  In considering a motion to dismiss, a court is permitted to take judicial notice of public records, which includes complaints and other documents filed in federal court.  *See Harrison v. Diamonds*, No. 14 Civ. 484 (VEC), 2014 WL 3583046, at *2 (S.D.N.Y. July 18, 2014) (quoting *Yan Won Liao v. Holder*, 691 F. Supp. 2d 344, 351-52 (E.D.N.Y. 2010)) (internal quotation marks omitted).  When a court takes judicial notice of such documents, it does so "not for the

7

truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991). Given that Defendant's motion is predicated on prior litigation in this district, the Court takes judicial notice of the documents filed in connection with *Medcalf I.*

### B. Analysis of Applicable Law

Defendant alleges that all of Plaintiff's claims are barred by res judicata. *See* Doc. 24. The doctrine of res judicata broadly encompasses the notion that "a right, question, or fact distinctly put in issue and directly determined by a court of competent jurisdiction, as a ground of recovery, cannot be disputed in a subsequent suit between the same parties or their privies[.]" *Mitchell v. Nat'l Broad. Co*., 553 F.2d 265, 268 (2d Cir. 1977) (quoting *S. Pac. R. Co. v. United States*, 168 U.S. 1, 48 (1897)). However, "[l]ike a river with more than one branch, res judicata embraces two concepts: issue preclusion and claim preclusion." *Murphy v. Gallagher*, 761 F.2d 878, 879 (2d Cir. 1985). Issue preclusion, often referred to as collateral estoppel, is succinctly defined as "the preclusive effect of a judgment that prevents a party from litigating a second time an issue of fact or law that has once been decided." *Id.* Alternatively, the term "res judicata" is often used more narrowly in reference to claim preclusion—the concept that "a judgment, once rendered by a court of competent jurisdiction, will be treated thereafter as the full measure of relief to be accorded between the same parties on the same . . . [claim or] cause of action." *Id.* (quoting *Kaspar Wire Works, Inc. v. Leco Eng'g & Mach., Inc*., 575 F.2d 530, 535 (5th Cir. 1978)) (internal quotation marks omitted). Although Defendant does not expressly state the specific basis for its motion, it is clear that it intended to assert the defense of claim preclusion

based on the cases and principles cited in its briefing.[6]  Doc. 24 at 8-9; *see also Malcolm v. Bd. of Educ. of Honeoye Falls-Lima Cent. Sch. Dist.*, 506 F. App'x 65, 67 (2d Cir. 2012) (explaining the doctrine of claim preclusion); *Hecht v. United Collection Bureau, Inc.*, 691 F.3d 218, 221-22 (2d Cir. 2012) (identifying claim preclusion requirements).

In order to assert an affirmative defense of claim preclusion, a party must show that an earlier decision was:  (1) a final judgment on the merits made by a court of competent jurisdiction; (2) in a case involving the same parties or their privies; and (3) involving the same cause of action.  *MacKinnon v. City of New York/Human Res. Admin.*, 580 F. App'x 44, 45 (2d Cir. 2014) (quoting *Hecht*, 691 F.3d at 221-22) (internal quotation marks omitted).

### i.    Adjudication on the Merits

"Dismissal with prejudice as a result of a successful motion to dismiss is usually considered a final adjudication on the merits."  *Witchard v. Montefiore Med. Ctr.*, No. 05 Civ. 5957 (JSR), 2006 WL 2773870, at *6 (S.D.N.Y. Sept. 26, 2006) (citing *Mitchell*, 553 F.2d at 271) ("It is well settled that . . . a motion to dismiss for failure to state a claim upon which relief can be granted and without reservation of any issue, is presumed to be upon the merits, unless the contrary appears of record or is stated in the decree, and the judgment has the same effect of res judicata as though rendered after trial, in a subsequent suit on the same claim.").  Plaintiff does not dispute that Judge Engelmayer's dismissal of *Medcalf I* pursuant to the defendants' Rule 12(b)(6) motion constituted a final adjudication on the merits or that the Southern District of New York qualified as "a court of competent jurisdiction." *See Hecht*, Inc., 691 F.3d at 221.

---

[6] Thus, the Court uses the terms "claim preclusion" and "res judicata" interchangeably throughout the rest of its opinion.

ii.     **Privity of the Parties**

The Second Circuit has observed that the question of privity in the claim preclusion context "is a functional inquiry in which the formalities of legal relationships provide clues but not solutions." *Chase Manhattan Bank, N.A. v. Celotex Corp.*, 56 F.3d 343, 346 (2d Cir. 1995). Nonetheless, the Second Circuit has provided some guidance, noting that "the principle of privity bars relitigation of the same cause of action against a new defendant known by a plaintiff at the time of the first suit where the new defendant has a sufficiently close relationship to the original defendant to justify preclusion." *Cent. Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A.*, 56 F.3d 359, 367-68 (2d Cir. 1995) (citing *Amalgamated Sugar Co. v. NL Indus., Inc.*, 825 F.2d 634, 640 (2d Cir. 1987)).  A court should inquire into "whether a party 'control[led] or substantially participate[d] in the control of the presentation on behalf of a party' to the prior action." *Id.* at 368 (quoting *Nat'l Fuel Gas Distribution Corp. v. TGX Corp.*, 950 F.2d 829, 839 (2d Cir. 1991)).

The majority of courts have found that an agency relationship is sufficient to establish privity for the purposes of res judicata. *John St. Leasehold, LLC v. Capital Mgmt. Res., L.P.*, 154 F. Supp. 2d 527, 542 (S.D.N.Y. 2001) *aff'd*, 283 F.3d 73 (2d Cir. 2002) (citing First, Fifth, and Eleventh circuit case law).  "Finding privity in an agency relationship is consistent with the teaching of the Court of Appeals for the Second Circuit that privity is to be applied 'flexibly' and is to be found where the new defendants have a 'sufficiently close relationship' with the defendants in the first action." *Id.* (citing *Cent. Hudson Gas*, 56 F.3d at 367-68).  Defendant argues that, because Walsh was a partner at the Defendant law firm, the two are in an agent-principal relationship and "in 'privity' for the purposes of res judicata."  Doc. 24 at 13.  Indeed, a general principle of partnership liability is that a partner is an agent for the partnership, and a

partnership is liable for the wrongful acts of its partners committed in the ordinary course of the business of the partnership.  *See* Uniform Partnership Act 1997 §§ 301, 305; *see also Durkin v. Shea*, 957 F. Supp. 1360, 1366 (S.D.N.Y. 1997)  ("[U]nder New York law, a partner is, in fact, an agent of his fellow partners, as well as of the partnership.").

However, the existence of an agency relationship between Walsh and Defendant does not establish privity for the purposes of res judicata without more.  The Supreme Court has observed that actions of an agent are deemed to be within "the scope of employment" when "actuated, at least in part, by a purpose to serve the [employer], even if it is forbidden by the employer." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 756 (1998) (applying the common law of agency to Title VII claims) (internal quotation marks and citation omitted).  The causes of action in the cases Defendant cites in support of its argument involved situations in which the agent or employee was acting within the scope of the agency or employment relationship.  For example, in *Krepps v. Reiner*, the Second Circuit found that there was privity between a corporate defendant in a prior action and its employee who negotiated a contract with the plaintiff, which precluded fraud claims against the employee based on a "clear relationship" of vicarious liability. 377 F. App'x 65, 68 (2d Cir. 2010).  The court noted that, besides being an officer, "it is undisputed that he was an employee acting within the scope of his employment in connection with the matter here at issue."  *Id.*  Privity was also found in *Umar Oriental Rugs, Inc. v. Carlson & Carlson, Inc*., in which an action brought against an insurer precluded a claim in a separate case against an insurance broker who was deemed to be the insurer's agent. 757 F. Supp. 2d 218, 225-226 (E.D.N.Y. 2010).  The plaintiff's first suit asserted breach of contract claims against the insurer for cancellation of its insurance policy.  *Id.* at 221.  The plaintiff's second action against the insurance broker raised various claims related to its procurement and management of the

11

policy—actions which were well within the scope of its agency relationship. *See id.* at 222.  In *John St. Leasehold*, the court identified a privity relationship between the Federal Deposit Insurance Corporation ("FDIC") and FDIC employees and non-FDIC defendants, who were not parties to the first action.  154 F. Supp. 2d at 543-544.  The court's determination was based on the fact that all of the activities which the plaintiff complained of in the second action stemmed from actions which the FDIC specifically authorized its agents to take, including, but not limited to, the manner in which they dealt with issues related to the loan, and their authority to commence a foreclosure action.  *Id.*  In *Official Publications, Inc. v. Kable News Company*, the court barred a plaintiff's fraud claims against the principal officers of a company, which was a defendant in a previous state court case brought by the same plaintiff.  811 F. Supp. 143, 147 (S.D.N.Y. 1993).  In finding privity, the court noted that the officers committed the alleged wrongful acts in their capacity as officials of the company.  *Id.*  Finally, a court found privity in *Vets N., Inc. v. Libutti*, where two defendants were considered to be agents of their spouses, who in turn were agents of a partnership named in a prior litigation by virtue of their status as general partners.  No. 01 Civ. 7773 (DRH) (ETB), 2003 WL 21542554, at *12 (E.D.N.Y. Jan. 24, 2003).  Although the case involved a more intricate web of relationships, the conduct at issue related to a lease signed by defendants on behalf of the partnership for a commercial property, i.e., conduct within the scope of the agency relationship.  *Id.* at *1.

In *Medcalf I*, the email exchanges between Walsh and his wife formed the sole basis for each of Plaintiff's claims.  As the court explained, "[t]he comments in question were contained in emails between two spouses, and on their face there is no reason to impute an intention to the Walshes that their commentary about Medcalf achieve broader circulation."  938 F. Supp. 2d at 489.  Because Walsh's communications with his wife were intended to be private, it is

implausible that he authored them with the aim of serving Defendant's interests.  Put another way, Walsh's private pillow talks with his wife were not within the scope of his duties as a partner of Thompson Hine.  Thus, general partnership principles do not provide a basis for finding privity in *Medcalf I.*

Privity may also exist where one party can be held vicariously liable for the actions of another.  The Second Circuit, albeit in dicta, has recognized the principle that "if two persons have a relationship such that one is vicariously responsible for the conduct of the other, a judgment against an injured person in favor of one person bars the injured person from reasserting his claim against the other." *Falbaum v. Pomerantz*, 19 F. App'x 10, 14 (2d Cir. 2001) (citing Restatement (Second) of Judgments § 51).[7]  Nonetheless, vicarious liability is similarly limited to instances where one person has acted within the scope of the relationship that forms the basis for vicarious liability.  *See* Restatement (Second) of Judgments § 51 cmt. a (listing types of relationships between persons that may result in one of them being held vicariously liable for the conduct of another).  According to the Restatement (Third) of Agency, a principal is subject to vicarious liability in two instances:  (1) when the agent commits a tort within the scope of employment; or (2) acts with apparent authority or purports to act on behalf of the principal.  § 7.03(2)(a)(b).

Defendants argue that the Amended Complaint itself is premised on a theory of vicarious liability with respect to Walsh's actions.  Doc. 29 at 3-4.  However, Defendant could not have

---

[7] The relevant portion of the Restatement states:

> If two persons have a relationship such that one of them is vicariously responsible for the conduct of the other, and an action is brought by the injured person against one of them . . . [a] judgment against the injured person that bars him from reasserting his claim against the defendant in the first action extinguishes any claim he has against the other person responsible for the conduct [.]

Restatement (Second) of Judgments § 51.

been held vicariously liable for the claims alleged in the prior action, at least to the extent that

they may be characterized as intentional torts.[8]  Under New York law, "employers cannot be

held liable for the intentional torts committed by employees for personal motives outside the

normal scope of their employment."  *Sowemimo v. D.A.O.R. Sec., Inc.*, 43 F. Supp. 2d 477, 492

(S.D.N.Y. 1999) (dismissing claim against employer for intentional infliction of emotional

distress).  Nor are partners jointly and severally liable for the intentional torts of a fellow partner,

unless they are committed in the course and scope of the partnership business.  59A Am. Jur. 2d

Partnership § 414; *see also* Alan R. Bromberg & Larry E. Ribstein, *Bromberg and Ribstein on*

*Partnership* § 4.07(d) (Supp. 2012-3) (partnership generally not liable for intentional torts,

including defamation); *c.f. Infant Swimming Research, Inc. v. Faegre & Benson, LLP*, No. 07

Civ. 00839 (LTB) (BNB), 2007 WL 3326685, at *5 (D. Colo. Nov. 6, 2007) aff'd, 335 F. App'x

707 (10th Cir. 2009) (finding fraudulent actions committed by a partner who forged court

documents were "plausibly within the course and scope of the partnership business").  Because

the prior litigation consisted of intentional tort claims based on Walsh's private conduct, *Medcalf*

---

[8] Defendant appears to indirectly concede that Plaintiff's claims consisted of intentional torts, except to the extent that she alleged negligent infliction of emotional distress in her original complaint.  *See* Doc. 29 at 3 n.1; *see also id.* at 4.  However, Plaintiff later amended her complaint to allege only intentional infliction of emotional distress.  *See Medcalf I*, Doc. 15 at ¶¶ 56-66.

In any event, defamation is sometimes broadly treated as an intentional tort.  *See Apionishev v. Columbia Univ. in City of New York*, No. 09 Civ. 6471 (SAS), 2012 WL 208998, at *2, 8 (S.D.N.Y. Jan. 23, 2012) (characterizing a plaintiff's defamation claims against a former employer as intentional torts); *Lindner v. Int'l Bus. Machines Corp.*, No. 06 Civ. 4751 (RJS), 2008 WL 2461934, at *11 (S.D.N.Y. June 18, 2008) (applying one-year statute of limitations for intentional torts to defamation claim).  Intentional infliction of emotional distress requires either intent to cause, or disregard of a substantial probability of causing, severe emotional distress.  *Medcalf I*, 938 F. Supp. 2d at 488.  The required mental state for tortious interference with business relations where a plaintiff does not allege a crime or independent unlawful action is intent.  *Id*. at 490.  The *Medcalf I* court concluded that Plaintiff did not adequately allege a wrongful state of mind under any of these standards.  *Id*. at 489, 490.

*I*, 938 F. Supp. 2d at 484, the Court finds that Thompson Hine was not in privity with the defendants in *Medcalf I*.[9]

### iii.    Causes of Action

Even if there existed privity between Thompson Hine and the *Medcalf I* defendants, the instant motion may also be denied insofar as Plaintiff has stated different claims that she either could not have brought against the defendants in the previous litigation or was otherwise not required to bring.  "Whether a claim that was not raised in the previous action could have been raised therein 'depends in part on whether the same transaction or connected series of transactions is at issue, whether the same evidence is needed to support both claims, and whether the facts essential to the second were present in the first.'"  *TechnoMarine*, 758 F.3d at 499 (quoting *Woods v. Dunlop Tire Corp.*, 972 F.2d 36, 38 (2d Cir. 1992)).  The question of whether two actions arise from the same transaction or claim is addressed by determining if the "underlying facts are related in time, space, origin, or motivation," the extent to which "they form a convenient trial unit," and whether such treatment "conforms to the parties' expectations or business understanding or usage."  *Id.* (quoting *Pike v. Freeman*, 266 F.3d 78, 91 (2d Cir.

---

[9] Defendant also claims that privity exists between Walsh and itself because any recovery by Plaintiff in *Medcalf I* was subject to indemnification by Defendant pursuant to a partnership agreement.  Doc. 29 at 5.  In a separate affidavit, Walsh attests to the partnership agreement's indemnity provisions and explains that his counsel in *Medcalf I* was secured through and compensated by the insurance company which provided liability coverage to partners of the firm.  Walsh. Aff. ¶ 3, Doc. 30.  However, Defendant does not proffer any authority that would permit the introduction of the affidavit in association with a motion to dismiss, nor is the Court aware of any.  *See CP III Rincon Towers, Inc. v. Cohen*, No. 10 Civ. 4638 (DAB), 2011 WL 651434, at *1 (S.D.N.Y. Feb. 16, 2011) ("Because the Court declines to convert Defendant's Rule 12(b)(6) Motion into a motion for summary judgment . . . the Declarations . . . are excluded from consideration for purposes of the motion to dismiss[.]); *Matthews v. Meeuwisse*, No. 00 Civ. 3721 (AKH), 2001 WL 15666, at *1 (S.D.N.Y. Jan. 8, 2001) (Rule 12(b)(6) motion converted to one for summary judgment where defendants submitted declarations containing background facts outside of the pleadings).  Furthermore, "New York law . . . does not permit common law indemnification against intentional torts."  *Barbagallo v. Marcum LLP*, No. 11 Civ. 1358, 2012 WL 1664238, at *7 (E.D.N.Y. May 11, 2012) (citing *Campers' World Int'l, Inc. v. Perry Ellis Int'l, Inc.*, No. 02 Civ.453 (RPP), 2002 WL 1870243, at *6 (S.D.N.Y. Aug. 13, 2002)).

2001)).  The claim or cause of action is comprised of the "identity of facts surrounding the occurrence," and not the legal theory used to frame a complaint.  *Woods*, 972 F.2d at 39.

    First, Defendant wrongly assumes that simply because Plaintiff restates many of the facts alleged in the prior litigation, the causes of action alleged here necessarily arise from the same transaction or claim.  Defendant maintains that all of Plaintiff's claims arise from the "same nucleus of operative facts," consisting of:  (1) "her employment by Defendant[;]" (2) "her relationship with George and Evelyn Walsh[;]" (3) "her access to Mr. Walsh's email account[;]" (4) "her pregnancy, childbirth and subsequent postpartum mental health issues[;]" (5) "Mr. and Mrs. Walsh's email correspondence about Plaintiff and her discovery of that correspondence[;]" and (6) "Defendant's termination of Plaintiff from her employment."  Doc. 24 at 14.  This recitation, however, describes the facts asserted too summarily and in the process mischaracterizes the Amended Complaint.  Ultimately, "[t]he fact that several operative facts may be common to successive actions between the same parties does not mean that a judgment in the first will always preclude litigation of the second."  *Tucker v. Arthur Andersen & Co*., 646 F.2d 721, 727 (2d Cir. 1981) (citing *Herendeen v. Champion Int'l Corp*., 525 F.2d 130, 134 (2d Cir. 1975) ("While the same alleged right, the right to receive pension benefits, is involved in both suits, the wrongful acts of defendants alleged in the two complaints are quite different.").[10]

---

[10] In *Tucker*, the Second Circuit upheld a district court's refusal to grant summary judgment on claim preclusion grounds.  646 F.2d at 728.  The first litigation arose from the embezzlement of substantial amounts of money by the principal stockholder, president, and chief executive officer of a cattle tax shelter.  *Id*. at 723.  Four insurance companies brought claims against the auditor responsible for certifying the financial statements of the company that acquired the tax shelter.  *Id*. at 724.  In turn, the auditor filed a third-party complaint against the acquiring company's chairman and chief executive officer, along with other individuals, seeking indemnification or contribution "by reason of their fraud or deceit" in the event the auditor was held liable for its alleged failure to discover the embezzlement.  *Id*.  A jury returned a verdict in favor of the acquiring company's chairman and the district court judge accordingly dismissed the auditor's third-party complaint against him.  *Id*. at 725-726.  The second case was brought against the same auditor by securities purchasers alleging fraud in connection with the auditor's certification of financial statements.  *Id*. at 723.  The auditor once again filed a third-party complaint against the acquiring company's chairman and others.  *Id*. at 723.  The Second Circuit refused to overturn the lower

The *Medcalf I* court specifically acknowledged at the outset that the controversy at issue centered on Walsh's private communications with his wife.  938 F. Supp. 2d at 481.  Correspondingly, the court's analysis of Plaintiff's claims focused exclusively on Walsh's comments to his wife and their aftermath.  *See id.* at 485-491.

 While there is undoubtedly some factual overlap between Plaintiff's first and second actions, the instant case plainly alleges institutional misconduct separate and apart from the purely private actions undertaken by the Walshes.  Plaintiff's employment discrimination allegations concern Defendant's personnel policies and alleged discriminatory actions based on Plaintiff's status as a (1) woman (2) who was pregnant and (3) suffered from a disability.  For example, Plaintiff alleges that she was prevented from keeping some of her regular prenatal appointments due to Defendant's "overly restrictive policy . . . for medical appointments," which Plaintiff claims most other female employees in her position viewed as disparately impacting pregnant women.  Am. Compl. at ¶ 11.  The Amended Complaint additionally references Defendant's "restrictive policies regarding medical leave" that "forced" her to work full-time up until two weeks before she gave birth.  *Id*. at ¶ 13.  Plaintiff recounts how she was allegedly denied reasonable accommodation by being restricted to using her breast pump machine during lunch breaks in a semi-private, unsanitary storage closet.  *Id*. at ¶¶ at 27-28.  She points out that, while Thompson Hine employees who smoke cigarettes are permitted to do so whenever they feel the urge, nursing female staff members are prevented from taking breaks at times when they physically need to breast pump.  *Id.* at ¶ 28.  She also broadly accuses Defendant's employees and managers of applying "continuing pressure to force her to return to work from her

---

court's determination that the auditor's third-party complaint in the second case was not precluded, pointing out that the two complaints depended on the parties' relationships with distinct groups of plaintiffs.  *Id.* at 728.

postpartum leave before her doctor felt Plaintiff was fully ready." *Id.* at ¶ 47.  In turn, Plaintiff

claims that Defendant terminated her because of her disability and wrongly denied her

unemployment compensation. *Id.* at ¶¶ 44-45, 48.  Plaintiff believes that the manner in which

Defendant treated her was different from how Thompson Hine interacts with her male

counterparts, which affected opportunities for promotion, discipline, and other terms and

conditions of employment. *Id.* at ¶¶ 50, 71.  In short, none of these allegations rely on Walsh's

private communication with his wife, as *Medcalf I* exclusively did.[11]

    Thus, the instant Complaint does not merely assert new legal theories;[12] it presents claims

that must of necessity require consideration of facts beyond those that formed the basis for

*Medcalf I*.  Defendant's first claim of gender discrimination may be reasonably read as alleging,

in part, disparate treatment under Title VII.  Am. Compl. at ¶ 49-56.  A prima facie case for

disparate treatment under Title VII requires the Plaintiff to show that "she is within a protected

class, she was qualified for the position, she was subject to an adverse employment action, and

the adverse action occurred under circumstances giving rise to an inference of discrimination."

*Novak v. Waterfront Comm'n of New York Harbor*, 928 F. Supp. 2d 723, 728 (S.D.N.Y. 2013)

(citing *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 498 (2d Cir. 2009)).  "A showing that an

employer treated plaintiff less favorably than a similarly situated employee" outside of her

---

[11] Defendant's reliance on *Harris v. Beth Israel Medical Center* is therefore misguided, given that the case involved a complaint that concerned "exactly the same transaction, predicated on exactly the same underlying facts, as did the dismissed State Court Complaint." No. 08 Civ. 11029 (CM) (JCF), 2009 WL 612498, at *8 (S.D.N.Y. Mar. 4, 2009) *aff'd*, 367 F. App'x 184 (2d Cir. 2010).

[12] Defendant points to a decision in which a magistrate judge applied the doctrine of res judicata to bar claims "aris[ing] out of the same set of events," broadly identified as the plaintiff's employment and termination. *Amadasu v. Bronx Lebanon Hosp. Ctr.*, No. 03 Civ.6450 (LAK) (AJP), 2005 WL 121746, at *8 (S.D.N.Y. Jan. 21, 2005) *report and recommendation adopted sub nom. Amadasu v. Rosenberg*, No. 03 Civ. 6450 (LAK), 2005 WL 954916 (S.D.N.Y. Apr. 26, 2005) *aff'd*, 225 F. App'x 32 (2d Cir. 2007).  In its brief discussion, the *Amadasu* court explained that it based its determination on the fact that the plaintiff brought "exactly the same" claims and causes of action, "or variants of the prior claims." *Id.*  Here, Plaintiff's employment-related discrimination and retaliation claims are not "variants" of defamation, tortious interference, or intentional infliction of emotional distress claims.

protected class is a "recognized method of raising an inference of discrimination for the purposes

of making out a prima facie case." *Abdul-Hakeem v. Parkinson*, 523 F. App'x 19, 20-21 (2d Cir.

2013) (quoting *Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 493 (2d Cir. 2010)).  The Amended

Complaint, in multiple sections, relies on facts not at issue in the previous litigation to allege that

Plaintiff was treated differently with respect to Defendant's medical appointment policies, breast

pumping restrictions, and manner in addressing her.[13]  Am. Compl. at ¶¶ 11, 28, 50.  Plaintiff's

second claim sounds in disparate treatment under the ADA, which requires showing that

Defendant is covered by the ADA, Plaintiff suffers from a disability within the meaning of the

ADA, she was "qualified to perform the essential functions of the job, with or without reasonable

accommodation," and she suffered an adverse employment action because of her disability.[14]

*Sacks v. Gandhi Eng'g, Inc*., 999 F. Supp. 2d 629, 633 (S.D.N.Y. 2014) (quoting *Capobianco v.

City of New York*, 422 F.3d 47, 56 (2d Cir. 2005)).  The only bases for Plaintiff's alleged

disability are the facts surrounding her pregnancy and post-partum depression—which were not

directly at issue in *Medcalf I*.  In order to succeed on a claim for reasonable accommodation

under the ADA, Plaintiff will ultimately have to show that she informed Defendant that an

---

[13] However, in order to actually prove disparate treatment, reference to some of the facts also at issue in *Medcalf I* is likely necessary—specifically, the events which led to Plaintiff's termination.  In order to establish a prima facie case of Title VII disparate treatment, "the action that is alleged to be gender-based" "must cause a materially adverse change in the terms and conditions of employment, and not just mere inconvenience."  *Patane v. Clark*, 508 F.3d 106, 112 (2d Cir. 2007) (internal citations and quotation marks omitted); *see also Kerzer v. Kingly Mfg*., 156 F.3d 396, 401 (2d Cir. 1998) (applying same requirement to disparate treatment based on pregnancy claim).  The Second Circuit has explained that a termination may be deemed "sufficiently disadvantageous to constitute an adverse employment action."  *Beyer v. The Cnty. of Nassau,* 524 F.3d 160, 163 (2d Cir. 2008) (quoting *Williams v. R.H. Donnelley, Corp*., 368 F.3d 123, 128 (2d Cir. 2004)).

[14] An adverse employment action has the same meaning in ADA discrimination claims as it does in the Title VII context.  *See Adams v. Festival Fun Parks, LLC*, 560 F. App'x 47, 49 (2d Cir. 2014)).

accommodation was needed and that her request was reasonable.[15]   *Rodal v. Anesthesia Grp. of Onondaga, P.C.*, 369 F.3d 113, 120 (2d Cir. 2004).   Plaintiff's fourth claim for pregnancy discrimination may be read as alleging that Defendant's institutional policies and practices produced a disparate impact.[16]   *See* Am. Compl. at ¶¶ 69-76.   A plaintiff asserting a disparate impact claim under Title VII must identify a facially-neutral employment practice or policy that is causing an alleged disparity.   *Barrett v. Forest Labs., Inc.*, No. 12 Civ. 5224 (RA), 2014 WL 4058683, at *19 (S.D.N.Y. Aug. 14, 2014) (citing *Chin v. Port Auth. of New York & New Jersey*, 685 F.3d 135, 151 (2d Cir. 2012)).   Plaintiff's fifth claim for retaliation under the FMLA may be reasonably construed as encompassing Defendant's denial of unemployment benefits, an allegation that was not raised in the previous litigation.[17]   To state a claim for discrimination under the NYCHRL, a plaintiff need only show "differential treatment of any degree based on a discriminatory motive;" furthermore, "the NYCHRL does not require either materially adverse employment actions or severe and pervasive conduct."[18]   *Gorokhovsky v. New York City Hous.*

---

[15] When "a disabled plaintiff claims that [she] can perform a particular job with a reasonable accommodation," she is required to initially show that: (1) "plaintiff is a person with a disability under the meaning of the ADA;" (2) "an employer covered by the statute had notice of his disability;" (3) "with reasonable accommodation, plaintiff could perform the essential functions of the job at issue;" and (4) "the employer has refused to make such accommodations."   *Rodal*, 369 F.3d at 118 (citing *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 217 (2d Cir. 2001)).

[16] A plaintiff can assert a Title VII claim under two different legal theories—disparate impact or disparate treatment. *Kelber v. Forest Elec. Corp.*, 799 F. Supp. 326, 332 (S.D.N.Y. 1992).   Plaintiff's claim for pregnancy discrimination may be generously read as alleging both.   *See* Am. Compl. at ¶¶ 49-56, 69-76.   Specifically, the fourth claim attempts to assert a disparate impact claim in stating that Plaintiff was "not treated the same for all employment-related purposes, including . . . [the] terms and conditions of employment as others [sic] similarly-situated employees" who were not pregnant at the time.   Am. Compl. at ¶ 73.

[17] Plaintiff appears to bring her fifth claim, at least in part, under 29 U.S.C. § 2615(a)(1) of the FMLA, alleging Defendant retaliated against her for taking FMLA leave.   Am. Compl. at ¶ 78.   FMLA retaliation claims also require a plaintiff to establish the occurrence of an "adverse employment action."   *See Potenza v. City of New York*, 365 F.3d 165, 168 (2d Cir. 2004); *see also Davies v. New York City Dep't of Educ.*, 563 F. App'x 818, 820 (2d Cir. 2014).

[18] A disparate treatment claim under the NYCHRL merely requires a plaintiff to show that "she was treated differently from others in a way that was more than trivial, insubstantial, or petty."   *Kellman v. Metro. Transp. Auth.*,

*Auth.*, 552 F. App'x 100, 102 (2d Cir. 2014) (citing *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 114 (2d Cir. 2013)) (internal quotation marks omitted).  The NYCHRL claim relies on the same discriminatory policies and acts as Plaintiff's Title VII and ADA claims. Accordingly, Plaintiff cannot rely on Walsh's email communications alone.

Practical considerations also weigh against preclusion.  It is settled law that there is no individual liability under Title VII or the ADA, even for those with supervisory responsibility. *Spiegel v. Schulmann*, 604 F.3d 72, 79 (2d Cir. 2010) (no individual liability under Title VII or the ADA).  Since the only named defendants in *Medcalf I* were Walsh and his wife, Plaintiff could not have brought either her Title VII or ADA claims in the previous litigation against the defendants in that case.  Although the FMLA allows for individual liability in some instances, it is uncertain whether Plaintiff would have been able to sustain an FMLA claim against Walsh himself.[19]  Certainly, Plaintiff could not have sustained a Title VII, ADA, or FMLA claim against Walsh's wife.  Indeed, the Walsh emails may not be admissible to prove Plaintiff's case at all, either because they are irrelevant to the causes of action alleged, or because of the absolute privilege afforded to communications between spouses.

When faced with a similar set of facts, the First Circuit declined to preclude a plaintiff's claims brought under the Employee Retirement Income Security Act (ERISA) where they could

---

No. 07 Civ. 3561 (DAB), 2014 WL 1243698 (S.D.N.Y. Mar. 26, 2014) (quoting *Williams v. Regus Mgmt. Grp., LLC*, 836 F. Supp. 2d 159, 173 (S.D.N.Y. 2011)).  The Second Circuit has instructed courts to "analyze NYCHRL [disparate treatment] claims separately and independently from any federal and state law claims," "construing the NYCHRL's provisions broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible[.]"  *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013) (internal quotation marks and citations omitted).

[19] To impose individual liability, a court must determine whether the defendant controlled, either in whole or in part, the plaintiff's FMLA rights.  *Smith v. Westchester Cnty.*, 769 F. Supp. 2d 448, 475 (S.D.N.Y. 2011) (quoting *Holt v. Welch Allyn, Inc.*, No. 95 Civ. 1135 (RSP) (GJD), 1997 WL 210420, at *2 (N.D.N.Y. Apr. 15, 1997)).  Although Walsh purportedly expressed displeasure concerning Plaintiff's absence, the Complaint does not allege that Walsh exercised any control over her ability to take leave or her subsequent termination.

not have been brought against the original defendant in the prior case.  *Negron-Fuentes v. UPS Supply Chain Solutions*, 532 F.3d 1, 10 (1st Cir. 2008).  Specifically, it cited the fact that the plaintiff did not pursue his ERISA claims in his original action and could not have viably done so because the only defendant in that action could not be held liable in an ERISA benefits action. *Id.*  While the concept of privity has allowed courts to preclude claims where different defendants are involved, the First Circuit described these cases as usually involving claims that "were or could have been brought against the original defendant in the original suit."  *Id.* (listing cases).  The court determined that it would "markedly extend claim preclusion" to hold that a plaintiff's claims are precluded where neither condition is met.  *Id.*  Although it acknowledged that "[t]he judicial expansion of claim preclusion doctrine, especially along its party dimension, is still a work in progress," it held that "[i]t is enough to say here that the ERISA claims were not brought and could not properly have been brought against the only defendant in [the previous litigation]."  *Id.*

None of the cases Defendant cites are at odds with the reasoning in *Negron-Fuentes*.  In *Harris*, the plaintiff filed a complaint against the same defendant that she had previously sued in New York State Supreme Court, containing virtually identical allegations.  2009 WL 612498, at *1.  The only "material differences" were the jurisdictional allegations and the theory of recovery asserted.  2009 WL 612498, at *4.  In *Amadasu* the second action was not only brought against the plaintiff's employer—which was also a named defendant in the prior litigation—it also stated claims against a different former employer, fellow employees, the lawyers and law firms that represented her employer in the original action, and a former patient.  2005 WL 121746, at *1.  The court dismissed the plaintiff's state law claims as barred by either issue or claim preclusion as to all defendants, including those who were not parties in the previous

litigation.  *Id*. at *5-7.  Unlike *Negron-Fuentes*, and the case at hand, neither of these decisions involved a plaintiff asserting claims that could not have been brought against the former defendant.

Since Walsh and his wife could not be held individually liable for these second set of claims, Defendant is essentially arguing that Plaintiff was somehow *required* to join Thompson Hine as a defendant in her original action.  In its papers, Defendant boldly proclaims that Plaintiff "was obligated to name Defendant in that prior case and assert her present claims at that time" without proffering any authority to support its pronouncement.  *See* Doc. 24 at 9; *see also id*. at 15-16 ("Plaintiff could have easily joined Defendant in her lawsuit in *Medcalf I* and asserted all of her present claims against it.").  Defendant's argument is fundamentally at odds with the concept of joinder under the Federal Rules of Civil Procedure, which compels the joinder of parties only when the "court cannot accord complete relief among existing parties" or where a party's absence may impair its ability to protect its interests or subject it to multiple claims.[20]  Fed. R. Civ. Pro. 19(a)(1).  Alternatively, when a right to relief is asserted against persons which arises "out of the same transaction, occurrence, or series of transactions or occurrences" or when "any question of law or fact common to all defendants will arise in the action," joinder of defendants is merely permissive.  Fed. R. Civ. Pro. 20(2).  Therefore, the Court holds that it would be improper to broaden the reach of res judicata to preclude Plaintiff's first through fifth claims.[21]

---

[20] Defendant does not appear to assert that joinder was compulsory under Rule 19.  To do so would have logically undercut its privity argument, as "[t]he general rule of privity for purposes of res judicata is that *one whose interests were adequately represented by another* vested with the authority of representation is bound by the judgment, although not formally a party to the [action]."  *Faiveley Transp. USA, Inc. v. Wabtec Corp*., 758 F. Supp. 2d 211, 217 (S.D.N.Y. 2010) (internal quotation marks and citation omitted) (emphasis added).

[21] Under the NYCHRL, it is unlawful for "an employer *or an employee or agent thereof*, because of the actual or perceived . . . gender [or]disability . . . of any person, to refuse to hire or employ or to bar or to discharge from

Plaintiff's seventh claim is on slightly different footing. In her seventh claim for relief,

Plaintiff alleges that Defendant's failure to properly supervise Walsh led to a violation of her

privacy rights when her confidential medical information was revealed to third parties through

Walsh's forwarded emails.  Am. Compl. at ¶ 86.  As Walsh's email communications with his

wife were at the center of *Medcalf I*, Plaintiff could have brought any associated privacy claims

against the defendants in the previous litigation.  However, because the Court has determined

that there was no privity between the defendants in *Medcalf I* and the Defendant here, Plaintiff's

seventh claim cannot be barred by the doctrine of res judicata.[22]

---

employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.." NYCHRL § 8–107(1)(a) (emphasis added).  The NYCHRL has thus been interpreted as permitting the individual liability of an employee "regardless of ownership or decisionmaking power."  *Malena v. Victoria's Secret Direct, LLC*, 886 F. Supp. 2d 349, 366 (S.D.N.Y. 2012) (quoting *Banks v. Corr. Servs. Corp.*, 475 F. Supp. 2d 189, 200 (E.D.N.Y. 2007)).

[22] Defendant also urges that Plaintiff cannot rely on principles of exhaustion to excuse her failure to assert her Title VII and ADA claims in *Medcalf I.*  A plaintiff cannot bring claims under the ADA until she exhausts administrative remedies.  *Harris*, 2009 WL 612498, at *8 (citing *Curto v. Edmundson*, 392 F.3d 502, 503 (2d Cir. 2004)).  Similarly, Title VII requires an employee to submit a claim to the Equal Employment Opportunity Commission (EEOC) before she can access the federal courts.  *Woods*, 972 F.2d at 39 (citing 42 U.S.C. § 2000e-5(f)(1)).  Plaintiff appears to argue that, since she was awaiting the outcome of administrative proceedings during the prior litigation, res judicata does not apply.  *See* Doc. 26 at 16-17.  This argument is unavailing.

Defendant correctly points out that the Second Circuit has "consistently held that res judicata applies to claims pending review in administrative proceedings[.]"  *Fried v. LVI Servs., Inc.*, 557 F. App'x 61, 65 (2d Cir. 2014) (citing *Woods*, 972 F.2d at 37-41).  If res judicata actually posed a risk of barring the present action, Plaintiff could have avoided its preclusive effects by requesting a stay pending the outcome of her administrative proceedings.  *Woods*, 972 F.2d at 41.  Had she sought a stay, the district court would have almost certainly granted it given the Second Circuit's firm guidance to do so "absent a compelling reason to the contrary."  *Id.*  In any event, Plaintiff's failure to request a stay does not require preclusion because the Court finds that there is no privity, no identity of claims, and therefore no basis for applying the doctrine of res judicata.

### III.   Conclusion

For the reasons set forth above, Defendants' motion to dismiss is DENIED.  The Clerk of the Court is respectfully directed to terminate the motion, Doc. 23.  Defendant is directed to answer the Amended Complaint by February 25, 2015.

It is SO ORDERED.

Dated:     February 4, 2015
           New York, New York

Edgardo Ramos, U.S.D.J.

25